## FORBEARANCE AGREEMENT

THIS FORBEARANCE AGREEMENT (this "Agreement") is entered into as of the ____ day of Oct, 2008 by and among Highland Community Bank (the "Bank"), Little Lamb Scholastic Academy, Inc., an Illinois Corporation (the "Borrowers") and Pamela Walker and Gary Walker ("Guarantors").

## WITNESSETH:

WHEREAS, the Borrower entered into these certain Promissory Notes ("Notes") to wit:

| Note | Date | Amount |
|---|---|---|
| 3641900300 | March 9, 2007 | $760,000.00 |
| 3404900100 | February 6, 2007 | $150,000.00 |
| 3404900200 | March 8, 2007 | $150,000.00 |

WHEREAS, the Borrower executed and delivered a Commercial Security Agreement and Business Loan Agreement ("Agreements") to the Bank;

WHEREAS, the Guarantors executed an unlimited Unconditional Guaranty, guarantying the indebtedness under the Notes, plus all interest on the indebtedness under the Loan Agreement and Notes, plus the Bank's costs, expenses and attorneys' fees incurred in collection of the indebtedness under the Notes (Guaranty) or enforcement of the Guaranty;

WHEREAS, one of the guarantors, Pamela Walker, executed and delivered a Mortgage Assignment of Leases and Rents, security agreement and Financial Statement to the Bank on March 9, 2007;

WHEREAS, the Notes, Security Agreements, Guaranties, Business Loan Agreement Mortgage, Assignment of Leases and Rents, and Financial Statement and any and all other related agreements entered into between the Bank and the Borrower (or other relevant third parties), shall be referred to collectively as the "Loan Documents";

WHEREAS, the Notes are all delinquent and therefore constitute a material default of the Notes and Notices;

WHEREAS, Borrower has requested that the Bank enter into this Agreement and forbear from the further exercise and enforcement of its rights, powers and remedies under the Loan Documents upon the terms and conditions set forth herein; and

WHEREAS, as a result of the continued existence of the Default under the Loan Documents the Bank has the present unrestricted right, inter alia, to enforce its rights, powers and remedies against the Borrower thereunder or at law or equity or by statute, including,

1

without limitation, the right to foreclose on the Collateral, as defined in the Loan Documents.

NOW, THEREFORE, for and in consideration of the promises and mutual agreements herein contained and for the purposes of setting forth the terms and conditions of this Agreement, the parties, intending to be bound, hereby agree as follows:

1. <u>Incorporation of the Loan Documents</u>. All capitalized terms which are not defined hereunder shall have the same meanings as set forth in the Loan Documents. The Loan Documents, to the extent not inconsistent with this Agreement, are incorporated herein by this reference as though the same were set forth in their entirety. To the extent any terms and provisions of the Loan Documents are inconsistent with the agreements set forth below, such terms and provisions shall be deemed superseded hereby. Except as specifically set forth herein, the Loan Documents shall remain in full force and effect and their provisions shall be binding on the parties hereto.

2. <u>Acknowledgment</u>. Borrower and the Guarantors acknowledge that as a result of the existing Events of Default, the Bank has the right to immediately enforce payment by Borrower of all of Borrower's Indebtedness and, in connection therewith, to immediately enforce their security interests in, and liens on, the Collateral and to exercise all other remedies provided to the Bank under the Loan Documents or at law or equity or by statute against Borrower and the Guarantors.

3. The borrower acknowledges the defaults under the Loan Documents includes, but are not limited to the following events of Default:

   a. Obligation 3641900300 is delinquent for payment due August 21, 2007 and the Borrower is unable to honor its liabilities to the Bank under the terms of the Note. Said payoff includes $757,958.91 of principal, $125,338.47 of interest and $1,343.24 of late charges.
   b. Obligation 3404900200 is delinquent for payment due August 21, 2007, and the Borrower is unable to honor its liabilities to the Bank under the terms of the Note. Said payoff includes $95,939.05 of principal, $20,319.84 of interest and $961.76 of late charges.
   c. Obligation 3404900100 is delinquent for payment due August 10, 2007, and the Borrower is unable to honor its liabilities to the Bank under the terms of the Note. Said payoff includes $140,185.52 of principal, $23,324.77 of interest and $792.70 of late charges.
      1. The Borrower shall pay all legal costs in six monthly payments beginning September 1, 2008 (Bank acknowledges receipt of $3,000.00 personal check on September 4, 2008).
      2. The Borrower shall make an arrearage payment of $40,000.00 on

2

execution of this agreement (Bank acknowledges receipt of payment of $40,000.00 on or about August 15, 2008).

3. The Borrower shall make monthly payments of $20,000.00 commencing on September 15, 2008. Their payment shall include a $2,000.00 tax escrow payment.

4. The Borrower shall bring all real estate taxes current by September 6, 2008 and show evidence of payment of the taxes. (Bank acknowledges receipt of a copy of a cashier check to the Cook County Treasurer in the sum of $14,518.69, dated September 4, 2008 for payment of first installment of 2007 real estate taxes and a cashier check payable to the Cook County Treasurer dated September 4, 2008 for the 2006 taxes that were sold.)

5. All payments made by the Borrower except for the attorneys fees and tax payments may be applied at the discretion of the Bank.

4. <u>Interest Accrual and Interest Payment.</u>    The following provisions shall apply to the accrual and payment of interest under the Loan Documents:

   a. **Interest Accrual Rate.**   Interest on the Indebtedness shall continue to accrue at the rates set forth in the Notes and a rate reduction will be considered by the Bank on December 15, 2008 provided the Borrower is not in default under the forbearance agreement.

   b. **Late Charges.**   Any late charges accrued through the date hereof shall remain accrued and owing by the Borrower.

5. <u>Limited Forbearance and Further Consideration.</u>

   a. Subject to compliance by Borrower with the terms and conditions of this Agreement and all of the terms and conditions of the Loan Documents, the Bank hereby agrees to forbear from exercising and enforcing its rights, powers and remedies afforded under the Loan Document as law at law, in equity or by statute with respect to the Defaults during the period from the date of this Agreement until March 31, 2009 (the "Forbearance Period"). The foregoing limited forbearance shall not be construed to impair the ability of the Bank to enforce any such rights, powers or remedies after the Forbearance Period regardless of whether or not such enforcement relates to actions taken or payments received during the Forbearance Period, or during the Forbearance Period for defaults or Events of Default other than the Defaults.

   b. Unless earlier terminated in accordance with the terms of this Agreement, the Bank's forbearance, as provided herein, shall immediately cease without notice on March 31, 2009 ("Forbearance Termination Date"), and Borrower at that time shall be obligated to pay to the Bank all of Borrower's Indebtedness and perform all terms, conditions and provisions of the Loan Documents.

3

c. The Bank's forbearance is further expressly subject to and conditioned upon Borrower's strict compliance with each and every term and provision of this Agreement, and, except with respect to the Defaults or as may be agreed herein, Borrower's strict compliance with each and every term and provision of the Loan Documents.

d. Upon the breach by Borrower of any provision of this Agreement, or any Event of Default under the or the Loan Documents other than the Defaults as such Defaults exist as of the date of this Agreement, other than receipts of payments from tenants received late, the Bank, at its option, may withdraw its forbearance hereunder. The Bank shall promptly advise Borrower of any such withdrawal. Upon such withdrawal, all of Borrower's Indebtedness shall be due and payable, and the Bank shall have the undisputed and absolute right to exercise and enforce all other rights, powers and remedies which may exist pursuant to the Loan Documents or at law, in equity or by statute, all without further demand or notice of any kind, all of which are hereby waived by Borrower.

e. The Borrower acknowledges and agrees that the Bank shall be under no obligation to extend the Forbearance Termination Date and that the Bank's failure to enforce any or all of their remedies under this Agreement, the Loan Documents, or under law or at equity after the expiration of the current Forbearance Period will not give rise to a further extension of the Forbearance Period absent a written agreement executed by the Bank to extend the Forbearance Termination Date.

f. Borrower further acknowledges and agrees, that the Bank's decision to allow the Borrower to use the Collateral during the Forbearance Period is of great value to the Borrower and that such forbearance is, independent of the other consideration received by the Borrower hereunder, sufficient consideration for each and every one of Borrower's obligations under this Agreement.

g. In the event Borrower or any Guarantor (I) file any voluntary petition under any Chapter of the Bankruptcy Code (title 11, U.S.C., hereinafter referred to as the insolvency laws or laws providing for relief of debtors, or directly or indirectly causes the other to file any such petition or to seek any such relief, either at the present time, or at any time prior to the end of the Forbearance Period, or at any time thereafter; or (ii) directly or indirectly causes any involuntary petition under any Chapter of the Bankruptcy Code to be filed against Borrower or any Guarantor, or directly or indirectly causes Borrower or any Guarantor to become the subject of any proceedings pursuant to any other state, federal or other insolvency law or laws providing for the relief of debtors, either at the present time, or at any time prior to the end of the Forbearance Period, or at any time thereafter; or (iii) directly or indirectly causes the Collateral or any interest of

4

Borrower or any Guarantor in the Collateral to become the property of any bankruptcy estate or the subject of any state, federal or other bankruptcy, dissolution, liquidation or insolvency proceedings, either at the present time, or at any time prior to the end of the Forbearance Period, or at any time thereafter, Borrower or any Guarantor agree to the lifting of the automatic stay by the appropriate Bankruptcy Court "for cause" pursuant to Section 362(d)(1) of the Bankruptcy Code (11 U.S.C. Section 362(d)(1)) to enable the Bank, in its sole discretion, to foreclose on and/or protect their interests in the Collateral. Said Bankruptcy Court shall be authorized to enter an order lifting the automatic stay without the necessity of an evidentiary hearing and without the necessity of the Bank's establishing the lack of adequate protection of its interest in the Collateral and lack of necessity of the Collateral for an effective bankruptcy reorganization. The automatic stay shall be lifted within thirty (30) days of filing of the applicable motion, subject to the Court's schedule and orders.

6. <u>Forbearance Events of Default</u>.    A "Forbearance Event of Default" shall mean the occurrence of any one or more of the following events:

   a    Borrower shall fail to observe or perform any term, covenant or agreement binding on it contained in this Agreement, or any agreement, instrument or document executed in connection herewith;

   b.   An Event of Default shall have occurred and be continuing under the Loan Documents other than the Defaults as such Defaults existed as of the date of this Agreement; or

   c.   The occurrence of a material adverse change (as reasonably determined by the Bank in its sole discretion) in Borrower, or in its business, or in the Collateral.

   Upon the occurrence of any Forbearance Event of Default, the Bank may immediately terminate the Forbearance Period and/or declare all of Borrower's Indebtedness due and payable. Upon the termination or expiration of the Forbearance Period, if at such time the outstanding amount of the obligations is not paid in full, the Bank shall be entitled to exercise all of its rights and remedies under the Loan Documents and applicable law. Borrower acknowledges that it shall have no claim for damages or otherwise against any Bank with respect to any such termination of the Forbearance Period or acceleration of Borrower's Indebtedness in accordance with the terms of this Agreement, the Loan Agreement and the Loan Documents.

7. <u>Reservation of Rights</u>.    The forbearance set forth herein shall be limited precisely as written and, except as expressly set forth herein, neither the fact of the Bank's forbearance nor any other term or provisions herein shall, or shall be deemed or construed to, (I) be a consent to any forbearance, waiver, amendment or modification of

any term, provision or condition of the Loan Agreement, (ii) affect, impair, operate as a waiver of, or prejudice any right, power or remedy which the Bank may now or hereafter have pursuant to the Loan Documents or any other document, agreement, security agreement or instrument executed by any Person in connection with or related to the Loan Documents, or at law or in equity or by statute including, without limitation, with regard to any existing or hereafter arising default, (iii) impose upon the Bank any obligation, express or implied, to consent to any amendment or further modification of the Agreement or (iv) be a consent to any waiver of any existing Event of Default (including, without limitation, the Defaults), all such Events of Defaults remaining outstanding. The Bank hereby expressly reserve all rights, powers and remedies specifically given to it under and the Loan Documents or now or hereafter existing at law, in equity or by statute.

8. <u>Representations and Warranties</u>. The representations, warranties and covenants set forth of the Loan Documents shall be deemed remade and affirmed as of the date hereof by Borrower, except that any and all references to the Loan Documents in such representations, warranties and covenants shall be deemed to include this Agreement.

9. <u>Delivery of Documents/Information</u>. The Borrower and Guarantors shall provide current Financial Statements, aging receivables list with names of debtors, addresses, and amounts due and owing and inventory and machinery lists upon execution of this Agreement.

10. <u>Reference to the Effect on the Loan Agreement.</u>

    a. <u>References</u>. Upon the Effective Date of this Agreement and on and after the date hereof, each reference in the Loan Documents to "this Agreement", "hereunder", "hereof", "herein" or words of like import shall mean and be a reference to the Loan Documents, as amended hereby.

    b. <u>Ratification</u>. As specifically modified above, the Loan Documents and all other documents, instruments and agreements executed and/or delivered in connection therewith shall remain in full force and effect, and are hereby ratified and confirmed.

    c. <u>No Waiver</u>. The Bank's failure, at any time or times hereafter, to require strict performance by Borrower of any provision or term of the Loan Documents, this Agreement or the Loan Documents shall not waive, affect or diminish any right of the Bank thereafter to demand strict compliance and performance therewith. Any suspension or waiver by the Bank of a breach of this Agreement or any Event of Default under the Loan Documents shall not, except as may be expressly set forth herein, suspend, waive or affect any other breach of this Agreement or any Event of Default under the Loan Documents, whether the same is prior or subsequent thereto and whether of the same or of a different kind of character. None of the

6

undertakings, agreements, warranties, covenants and representations of Borrower contained in this Agreement, the Loan Documents or in any of the Loan Documents, and no breach of this Agreement, or Event of Default under the Loan Documents shall be deemed to have been suspended or waived by the Bank unless such suspension or waiver is (a) in writing and signed by the Bank, and (b) delivered to Borrower. In no event shall the Bank's execution and delivery of this Agreement establish a course of dealing among the Bank and the Borrower or any other obligor or in any other way obligate the Bank to hereafter provide any amendments or waivers with respect to the Loan Documents.

11. <u>Representations and Warranties of the Borrower and Guarantors</u>. Borrower and the Guarantors hereby represent and warrant to the Bank as of the date hereof as follows:

   a. The execution and delivery of this Agreement and the performance by Borrower and the Guarantors of their obligations hereunder are within the Borrower's and the Guarantor's powers and authority, have been duly authorized by all necessary corporate action and do not and will not contravene or conflict with the Articles of Organization or Operating Agreement of Borrower.

   b. The Loan Documents (as amended by this Agreement) constitute legal, valid and binding obligations enforceable in accordance with their terms by the Bank against Borrower and the Guarantors, and Borrower and the Guarantors expressly reaffirm each of their obligations under the Loan Documents (as modified by this Agreement), including, without limitation, the Borrower's Indebtedness. Borrower and the Guarantors further expressly acknowledge and agree that the Bank has a valid, duly perfected, first priority and fully enforceable security interest in and lien against each item of Collateral except as otherwise set forth in the Loan Documents. Borrower and the Guarantors agree that they shall not dispute the validity or enforceability of the Loan Documents (as it was stated before and after this Agreement) or any of its respective obligations thereunder, or the validity, priority, enforceability or extent of the Bank's security interest in or lien against any item of Collateral, in any judicial, administrative or other proceeding. The Loan Documents continue to be the legal, valid and binding agreements and obligations of Borrower, enforceable in accordance with their terms, as modified by this forbearance, that the Bank is not in default under any Loan Documents and Borrower has no offset or deference to its performance or obligations under any Loan Documents;

   c. No consent, order, qualification, validation, license, approval or authorization of, or filing, recording, registration or declaration with, or other action in respect of, any governmental body, authority, bureau or agency or other person is required in connection with the execution, delivery or performance of, or the legality, validity, binding effect or enforceability of, this Agreement;

d.  The execution, delivery and performance of this Agreement by Borrower and Guarantors do not and will not violate any law, governmental regulation, judgment, order or decree applicable to Borrower and Guarantors and do not and will not violate the provisions of, or constitute a default or any event of default under, or result in the creation of any security interest or lien upon any property of Borrower and Guarantors pursuant to, any indenture, mortgage instrument, contract, agreement or other undertaking to which Borrower or Guarantors are a party or is subject or by which they or any of their real or personal property may be bound; and

e.  As of the date of this Agreement, Borrower hereby reaffirms all covenants, representations and warranties made in the Loan Documents to the extent the same are not amended hereby, and agrees that all such covenants, representations and warranties shall be deemed to have been remade as of the date of this Agreement.

12. Fees and Expenses. The Borrower and Guarantors agree to pay on the date of this Agreement all of the Bank's reasonable costs, fees, attorney fees and expenses of or incurred by the Bank in connection with the evaluation, negotiation, preparation, execution and delivery of this Agreement and any other instruments and documents executed and delivered in connection with the transactions described herein (including the filing or recording thereof), including, but not limited to, the fees, appraisal, feasibility study and expenses of counsel for the Bank, search fees and taxes payable in connection with this Agreement and any future amendments to the Loan Documents.

13. Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, and all of which together shall constitute one and the same instrument.

14. Delivery and Payment. This Agreement shall not be effective unless fully executed by Borrower and Guarantors and delivered, together with funds in the amount set forth in paragraph 3 above and fees and expenses set forth in paragraph 12 above.

15. Bank Accounts. Borrower shall establish an account at the Bank dedicated to the satisfaction of payments under this agreement. Borrower shall direct the appropriate agencies at State of Illinois to send all monies and receivables due the borrower to the account set up at the Bank. Borrower shall furnish the Bank with monthly relievable reports.

16. Borrower shall supply to the Bank upon execution of this Agreement and quarterly thereafter, corporate financial statements along with all guarantors' financial statements and tax returns.

8

IN WITNESS WHEREOF, the parties hereto have duly executed this Forbearance Agreement as of the date first above written.

_/s/ Pamela Walker_
Pamela Walker

_/s/ Gary Walker_
Gary Walker

HIGHLAND COMMUNITY BANK

By: _____

Its: _____

LITTLE LAMB SCHOLASTIC ACADEMY, INC.,

By: _/s/ Pamela Walker_
Its: __President__

Subscribed and Sworn to Before
me this _____ day of _____, 2008

_____

9